# In the United States Court of Federal Claims

|  |  |
|---|---|
| PETER J. POLINSKI,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 25-cv-783<br><br>Filed: October 15, 2025 |

## MEMORANDUM AND ORDER

Plaintiff Peter J. Polinski, appearing *pro se*, filed this action against the United States (Defendant) alleging a "failure to redeem" a negotiable instrument. ECF No. 1 ("Complaint" or "Compl.") at 6.[1] According to Plaintiff, this purported failure constitutes a taking under the Fifth Amendment, an illegal exaction, violation of various U.S. statutes, breach of trust, misappropriation of funds, and violation of the United States Constitution, among various other claims. Compl. at 5–7, 8; ECF No. 10 ("Response" or "Resp.") at 2–3, 5–6, 8. Pending before the Court are Defendant's Motion to Dismiss (ECF No. 8) ("Def. Mot.") under Rules 12(b)(1) and 12(b)(6), Plaintiff's Motion to Proceed *in forma pauperis* (ECF No. 2) ("IFP Motion")*,* and Plaintiff's 17 various other procedural motions (ECF Nos. 11–24, 26, 30, 31) ("Procedural Motions"). *See infra* at 17, 18 (listing motions). As Plaintiff's claims fall outside this Court's jurisdiction, fail to state a claim upon which relief can be granted, and are frivolous, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED**. Additionally, as

---

[1] Citations throughout this Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

explained further below, Plaintiff's IFP Motion is **DENIED**.  Plaintiff's Procedural Motions are also **DENIED**, apart from ECF No. 26 ("Motion for Leave to File Out of Time and to Correct Deficiency" or "Motion to Correct"), which is **GRANTED IN PART** and **DENIED IN PART**.

## PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on May 5, 2025, and moved to proceed *in forma pauperis* that same day.  *See* Complaint, IFP Motion.  Subsequently, on July 7, 2025, Defendant filed its Motion to Dismiss, contending that dismissal is warranted because (i) the Court lacks jurisdiction over Plaintiff's due process, tort, and various statutory claims, and (ii) Plaintiff failed to state a plausible claim for an illegal exaction or a Fifth Amendment Takings claim.  *See* Def. Mot. at 6–9.  Plaintiff subsequently filed an "Opposition to Defendant's Motion to Dismiss" (ECF No. 10) ("Response" or "Resp.") on August 11, 2025; the Clerk of Court initially marked it as deficient and this Court granted Plaintiff leave to file the Response.  ECF Nos. 9, 10.  In the following weeks, Plaintiff filed 17 additional procedural motions (ECF Nos. 11-24, 26, 30, 31) (collectively, "Procedural Motions").

The Court stayed briefing on these motions pending resolution of Defendant's Motion to Dismiss, which raised threshold jurisdictional issues.  ECF No. 28.  On August 25, Defendant filed a Reply in support of its Motion to Dismiss.  ECF No. 25 (Reply).  The next day, Plaintiff filed a deficient Motion to File Out of Time and Correct Deficiencies (Motion to Correct), which included (i) a request for an in-chambers hearing (ECF No. 26-1), and (ii) a corrected version of his Response (ECF No. 26-2) ("Amended Response" or "Am. Resp."), ECF No. 26,[2] despite that the

---

[2] Both versions of Plaintiff's Response are nearly identical, but ECF No. 26 contains an additional section on trust law, equity, and the Constitution.  Am. Resp. at 12-14.  Because this Court construes *pro se* complaints liberally, both the amended and original Response will be considered as supplements to the Complaint.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  As Plaintiff moved

Court had already granted Plaintiff leave to file the original Response, with its deficiencies.  ECF No. 9.  On September 3, 2025, the Court granted Plaintiff leave to file a Motion to File a Corrected Response.  ECF No. 29.

## **FACTUAL BACKGROUND**

Plaintiff asserts that on September 3, 2024, he mailed a "certified check" of $36,000,000.00 to the New York State Treasurer.  Compl. at 4, 6.  Plaintiff alleges that this currency was "lawfully tendered and deposited into the public system, including [Court Registry Investment System]."[3] Resp. at 7.  He further asserts that subsequently, the United States Treasury "failed to redeem" this "check" and instead "withheld, retained, or ignored" it— a failure which he contends the Office of the Comptroller of the Currency (OCC) permitted.  Compl. at 6–7; Resp. at 2.

According to Plaintiff, the Defendant's purported "failure to redeem" gave rise to many claims: a taking under the Fifth Amendment, Compl. at 7, 8; an illegal exaction, *id.* at 5; a violation of various provisions of the U.S. Code, *id.* at 7, 8; Resp. at 2, 6; misappropriation of funds, Compl. at 8; embezzlement, *id.*; constructive conversion, Resp. at 3; breach of trust and fiduciary duty, Compl. at 6, 8; and encroachments on the constitutional protections of the First, Fourth, Fifth, Ninth, and Thirteenth Amendments, as well as "due process and substantive property rights," Resp. at 5, 8.  Plaintiff alleges that he has suffered many financial, constitutional, and psychological harms as a result.  Compl. at 7.

---

to file the exact same amended response in ECF No. 30, the Court denies the motion (ECF No. 30) as moot.  *See infra* at V.

[3] Defendant protests that Plaintiff has not explained how his claim based on submitting currency to the New York State Treasurer is a claim against the Treasury.  Def. Mot. at 7.  This Court, construing Plaintiff's Complaint liberally, interprets his Complaint as alleging that the check was ultimately deposited into the federal system, C.R.I.S., alluded to in the exhibits to Plaintiff's Complaint and in subsequent filings, and thus was tendered to the United States.  *See* ECF No. 1-2 at 3; Resp. at 7.

## APPLICABLE LEGAL STANDARDS

It is well-established that this Court is not a forum for all federal claims; rather it is one of limited jurisdiction. *See Marcum LLP v. United States*, 753 F.3d 1380, 1382 (Fed. Cir. 2014) ("The Court of Federal Claims is a court of limited jurisdiction."). Generally, the Tucker Act defines this Court's jurisdiction. *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act vests this Court with jurisdiction over any suit against the United States for money damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act does not create any enforceable right against the United States on its own, nor does it grant jurisdiction for "every claim invoking the Constitution, a federal statute, or a regulation." *United States v. Mitchell*, 463 U.S. 206, 216 (1983); *United States v. Testan*, 424 U.S. 392, 398 (1987). To invoke jurisdiction under the Tucker Act, a plaintiff must "identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).

"[T]he court must address jurisdictional issues, even *sua sponte*, . . . whether raised by a party or not." *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 992–93 (Fed. Cir. 2019); *see* Rule 12(h)(3) ("If the [Court of Federal Claims] determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); *Kissi v. United States*, 493 F. App'x 57, 58 (Fed. Cir. 2012). When determining jurisdiction, this Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

4

To withstand a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, this Court must "accept as true the complaint's well-pled factual allegations" but need not "accept the asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). Dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6) "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (interpreting predecessor to Rule 12(b)(6)). The Court "must consider the complaint in its entirety" as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Further, this Court liberally construes filings submitted by *pro se* plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Although held to a less stringent standard for procedural deficiencies, *pro se* plaintiffs must still prove by a preponderance of the evidence that this Court has subject matter jurisdiction. *See Roman v. United States*, 61 F.4th 1366, 1370 (Fed. Cir. 2023); *see also Colbert v. United States*, 617 F. App'x 981, 983 (Fed. Cir. 2015) ("No plaintiff, *pro se* or otherwise, may be excused from the burden of meeting the court's jurisdictional requirements."). Additionally, while this Court permits ambiguities in *pro se* filings, it "does not excuse . . . failures" on the merits. *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

Finally, Section 1915 of Title 28 of the United States Code, which permits individuals who cannot afford a federal court's filing fees to pursue their claims *in forma pauperis* without pre-

payment, mandates that the Court dismiss all frivolous claims and those that fail to state a claim upon which relief can be granted:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court *shall dismiss the case at any time* if the court determines that . . . (B) the action or appeal . . . (i) is *frivolous or malicious*; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B) (emphasis added).  Dismissal of claims as frivolous "is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible," or "if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327−28 (1989) (citations omitted)); *Dozier-Carter v. United States*, No. 10-5141, 2010 WL 4569990, at *2 (Fed. Cir. Nov. 5, 2010).  Accordingly, the Court may "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327.

## DISCUSSION

As this Court lacks jurisdiction under even the most liberal construction of Plaintiff's complaint, it must dismiss Plaintiff's claims without considering their merits.  Even if it did have jurisdiction, the Court finds that Plaintiff's filings fail to state a claim upon which relief may be granted.  Finally, the Court is obligated to dismiss this case because it is frivolous.

## I.    This Court Lacks Jurisdiction Over Plaintiff's Tort, Equitable, Constitutional, and Statutory Claims

Plaintiff alleges a multitude of claims, including tort and constitutional claims, over which the Court lacks jurisdiction.  For the reasons discussed further below, the Court must dismiss these claims.  Rule 12(h)(3) ("If the [Court of Federal Claims] determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

**A.    The Court Lacks Jurisdiction over Plaintiff's Claims Sounding in Tort**

Plaintiff's pleadings assert numerous tort-based claims, including "misappropriation of funds," "gross negligence of trust," "estate embezzlement," "unjust enrichment," Compl. at 8, "breach of fiduciary duty," causing "[p]sychological harm" including "pain and suffering due to defamation," *id.* at 7, "breach of trust," Resp. at 7, and "constructive conversion," *id.* at 3.  In his Response, Plaintiff maintains that he "does not assert tort-based damages," *id.* at 6, while continuing to allege a "breach of trust" and other claims sounding in tort.  *Id.*; *see* Procedural Motions (alleging various breaches of trust); *see also Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) (fraud and similar claims are torts); *Woods v. United States*, 122 F. App'x 989, 991 (Fed. Cir. 2004) (defamation is a tort); *Demodulation, Inc. v. United States*, 118 Fed. Cl. 69, 73 (2014) (misappropriation is a tort); *Naskar v. United States*, 82 Fed. Cl. 319, 321 (2008) (negligence is a tort); *Block v. United States*, 66 Fed. Cl. 68, 72 (2005) (conversion is a tort).  The Court must look to the true nature of Plaintiff's claims, which clearly sound in tort, as opposed to statements to the contrary.  *Pines Residential Treatment Ctr., Inc. v. United States*, 444 F.3d 1379, 1380 (Fed. Cir. 2006) (citing *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994) ("Regardless of a party's characterization of its claim, 'we look to the true nature of the action in determining . . . jurisdiction.'"); *Livingston v. United States*, 167 Fed. Cl. 604, 618–19 (2023) (collecting cases stating the same, from both the Federal Circuit and the Court of Federal Claims.).  It is axiomatic that the "Court of Federal Claims' limited jurisdiction does not include tort claims." *Chisum v. United States*, No. 2025-1562, 2025 WL 2836408 at *2 (Fed. Cir. Oct. 7, 2025); 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction . . . in cases not sounding in tort"); *Keene Corp. v. United States*, 508 U.S. 200, 214 (1993).  Accordingly, such claims are dismissed for want of jurisdiction.

### B.    The Court Lacks Jurisdiction Over Plaintiff's Constitutional Claims

In addition to tort claims, Plaintiff has raised various constitutional claims over which this Court lacks jurisdiction.  While this Court adjudicates certain cases arising under the Constitution, its jurisdiction is limited to money-mandating claims.  *Chisum*, 2025 WL 2836408 at *2 ("[T]he Court of Federal Claims' limited jurisdiction does not include . . . non-money-mandating constitutional provisions."); *see Fisher*, 402 F.3d at 1173 (requiring this Court to determine whether a constitutional provision is money-mandating to determine whether it has jurisdiction over a claim).  From what the Court can discern, Plaintiff first asserts that his "due process" of law was violated by the Treasury's failure to redeem his check.   Compl. at 2, 7; Resp. at 2. Furthermore, the Complaint alleges that the Government caused Plaintiff's "involuntary servitude," Compl. at 6, and "peonage," *id.* at 8, "in violation of the Thirteenth Amendment's prohibition against slavery."  Resp. at 5.  In his Response, Plaintiff includes a further litany of purported "direct constitutional injuries," including alleged violations of the First, Fourth, and Ninth Amendments.  *Id.* at 5.

The Court lacks authority to hear these claims.  Insofar as Plaintiff's due process claim is separate from his takings claim,[4] "[t]he law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act."  *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013).  The Court similarly has no jurisdiction over First Amendment Claims.  *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) ("The law is well-settled that . . . the First Amendment . . . [is] not money-mandating in these circumstances.").  Nor does it have jurisdiction over Fourth Amendment claims.  *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997)

---

[4] *See infra*, Section II.A.

("Because monetary damages are not available for a Fourth Amendment violation, the Court of Federal Claims does not have jurisdiction.").  Claims made under the Ninth Amendment, likewise, do not fall under this Court's jurisdiction.  *Brashear v. United States*, 776 F. App'x 679, 682 (Fed. Cir. 2019) (none of Fourth, Seventh, Ninth, Tenth, or Thirteenth Amendments "are money-mandating.").  Finally, it is well-established that this Court lacks jurisdiction over claims asserted under the Thirteenth Amendment.  *Id.*

### C.    The Court Lacks Jurisdiction over Plaintiff's Statutory Claims

Finally, Plaintiff lists a variety of statutes that he contends "create a money-mandating framework that supports the jurisdiction of this Court."  Resp. at 2; *see* Compl. at 4, 6, 8.  To the contrary, the statutes Plaintiff cites are not money-mandating and cannot support this Court's jurisdiction under the Tucker Act, either individually or in tandem.  A statute is money-mandating not just because it imposes duties on the government, but instead only "if it can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties it imposes."  *Ferreiro v. United States*, 501 F.3d 1349, 1352 (Fed. Cir. 2007) (citations and internal quotation marks omitted).

Specifically, Plaintiff points to: 31 U.S.C. Section 3123; 12 U.S.C. Sections 411 and 412; 31 U.S.C. Section 9303(c)(2); 15 U.S.C. Sections 1 and 2; Public Law 73-10; and the Uniform Commercial Code Sections 3-603 and 8-505 through 8-508.  Compl. at 8; Resp. at 4, 7.  These statutes are insufficient to establish jurisdiction in this Court.  First, 31 U.S.C. Section 3123 simply requires that the Government pay its obligations under Chapter 31, without specifying the obligation or directing compensation.  Therefore, it is not money-mandating.  *Harris v. United States*, No. 24-859, 2025 WL 432922, at *3 (Fed. Cl. Feb. 7, 2025) (holding that various provisions of Chapter 31, including Section 3123, are not money-mandating).  Nor are 12 U.S.C. Sections

411 and 412 money-mandating in nature. *Kennedy v. United States*, 748 F. App'x 335, 336 (Fed. Cir. 2019) ("We agree . . . that [plaintiff's] argument that [12 U.S.C.] § 411 entitles him to money on demand from entities like the Federal Reserve Bank of New York and other defendants is frivolous."); *Robinson v. United States*, No. 24-CV-166, 2024 WL 4524743, at *8 (Fed. Cl. Sept. 17, 2024), reconsideration denied, No. 24-CV-166, 2024 WL 4719093 (Fed. Cl. Nov. 7, 2024) (holding that none of plaintiff's relied-upon provisions, including Sections 411 and 412, are money-mandating); *Richardson v. United States*, 170 Fed. Cl. 598, 600–01 (2024) (same). Public Law 73-10, in which Congress suspended the gold standard, merely "ensure[s] valuation of currency" and is not money-mandating. *Johnson v. United States*, 79 Fed. Cl. 769, 774-75 (2007). Similarly, the Court lacks jurisdiction over claims arising from the Uniform Commercial Code. *Clark v. United States*, 116 F. App'x 278, 279 (Fed. Cir. 2004) (affirming the dismissal of a claim under the UCC for lack of jurisdiction); *Harris v. United States*, No. 24-859, 2025 WL 432922, at *3 (Fed. Cl. Feb. 7, 2025) ("Claims under the UCC . . . are not within this court's jurisdiction."); *Mikolajczyk v. United States*, 172 Fed. Cl. 15, 18 (same), *motion for relief from judgment denied*, 172 Fed. Cl. 539 (2024). Regarding sections 1 and 2 of Title 15 of the U.S. Code, part of the Sherman Antitrust Act, the Court also lacks jurisdiction. The Sherman Antitrust Act grants jurisdiction over its enforcement only to "the several district courts of the United States" — and "[w]here Congress has granted exclusive jurisdiction in certain courts, these statutory provisions govern." 15 U.S.C. § 4; *Cherbanaeff v. United States,* 77 Fed.Cl. 490, 502 (2007), *aff'd,* 300 Fed.Appx. 933 (Fed. Cir. 2008); *see also Everett v. United States*, No. 2024–2245, 2024 WL 4750068, at *1 (Fed. Cir. Nov. 12, 2024) (per curiam).

Finally, 31 U.S.C. Section 9303(c)(2) is not money-mandating in nature. Section 9303(c)(2) merely states that using an "eligible obligation" as security is the same as using a

"certified check." An "eligible obligation" is "any security designated as acceptable in lieu of a surety bond by the Secretary of the Treasury." 31 U.S.C. § 9301(2). Section 9303(c)(2) does not mention a "right of recovery in damages," let alone "mandate[] compensation" if the government does not accept an eligible obligation in lieu of a check—and therefore cannot be fairly interpreted as money-mandating. *See Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (describing the standard for a statute to be money-mandating); *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006) (same). Even if this statute were money-mandating, the Court must ask whether it mandates compensation as to the particular class of plaintiffs to which Plaintiff belongs. *Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 876 n.2 (Fed. Cir. 2007). Section 9303(c)(2) establishes that various forms of currency are acceptable as security "[i]f a person is required under a law of the United States to give a surety bond." 31 U.S.C. § 9303(a). Any right to compensation would not apply to Plaintiff, who has not alleged that he has been required to give a surety bond.[5]

In sum, none of the statutes Plaintiff cites are money-mandating or invoke this Court's jurisdiction. Even strung together, the statutes do not create a money-mandating framework, as they indicate no "substantive right" to "compensation by the Federal Government for the damage sustained." *In re United States*, 463 F.3d 1328, 1333–34 (Fed. Cir. 2006) (first citing *Hamlet v. United States,* 63 F.3d 1097, 1101 (Fed. Cir. 1995), and then *United States v. Mitchell*, 463 U.S. 206, 217, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *see Gravatt v. United States*, 100 Fed. Cl. 279, 287 (2011) (holding that a statute was not money mandating when it did "not impose any specific

---

[5] Plaintiff explains that he tendered the check in "lawful settlement of Case No. 18120127"; a number also used as the account number in certain tax filings attached to the Complaint. *See* ECF No. 1-2 at 6–9; Amend. Resp. at 18. This Court is not aware of any legal case to which this number refers.

monetary obligations on the government"). Accordingly, these claims must be dismissed. Rule 12(h)(3).

## II.    Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted

After removing extra-jurisdictional claims, Plaintiff is left with claims under the Fifth Amendment Takings Clause and for illegal exaction. Plaintiff fails to state a claim upon which relief can be granted for either, as the allegations in the Complaint are implausible and do not plead the elements of either claim.

### A.    Plaintiff's Fifth Amendment Takings Claim is Implausible and Insufficiently Pled

Plaintiff raises a takings claim under the Fifth Amendment. *See* Compl. at 8. A plaintiff may state a claim for a Fifth Amendment taking by (i) "identif[ying] a cognizable Fifth Amendment property interest," and (ii) showing that "the government's action amounted to a compensable taking of that interest." *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1348 (Fed. Cir. 2013).

According to Plaintiff, he mailed a "$36,000,000.00 negotiable instrument (Exhibit A)" to a state government official and the federal government's "failure to redeem" said check constituted an unjust taking and requires compensation. Compl. at 4–5. Defendant contends that there are two problems with Plaintiff's takings claim as asserted in the Complaint: first, the claim is implausible; and second, the Complaint does not allege that Plaintiff had a property interest in $36 million. Def. Mot. at 7.

Defendant is correct. The pleadings contain no facts plausibly suggesting that Plaintiff had an instrument worth $36 million in the first place. While Plaintiff attaches an image of a check to his Complaint, the check is marked VOID and has no financial institution listed on it except the United States Treasury, which is also marked as the intended recipient. ECF No. 1–2 at 4. The

Court finds no evidence from the face of the Complaint that this check is valid or validly worth $36 million. *See Ibrahim v. United States*, No. 19–760, 2019 WL 3384849, at *4 (Fed. Cl. July 26, 2019) (finding it implausible that contract signed only by plaintiff and based on "bizarre circumstances" actually entitled plaintiff to millions of dollars); *Maat El v. United States*, No. 24-1563, 2024 WL 4851311, at *4 (Fed. Cl. Nov. 21, 2024) (finding that a demand for $100 million without basis for any damages from alleged injury was frivolous); *see also Jefferson v. United States*, No. 25-cv-302, 2025 WL 666186, at *2 (Fed. Cl. Feb. 28, 2025) (finding that the "fanciful sum of money requested" without any supporting facts demonstrated frivolousness). While Plaintiff remarks repeatedly that this was "certified," "eligible," and "lawfully tendered" currency, Compl. at 7–8, such assertions cannot stand in the place of sufficient and specific facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. 544, 570 (2007)).

Even if the purported "certified check" was legitimate, there is no explanation in the pleadings for (i) how Plaintiff has a property interest in a tendered check when he is not the recipient listed on the check, and (ii) why a "failure to redeem"[6] any check would be a taking of a property interest. How Defendant could have taken a property interest in this purported check, which appears both void and addressed "to the order of" the Government, is not plausibly

---

[6] Plaintiff also frames his claim as the government having "ignored" the check, Resp. at 2. If so, the claim still fails. The government's decision to "ignore" Plaintiff's preferred currency is not by itself a taking of Plaintiff's property. Given Plaintiff's other filings, it appears that Plaintiff may believe that the government has funds for him in trust, and his "check" was an attempted withdrawal of his funds which the government has not facilitated. The existence of such a trust relationship is implausible, unsupported, and frivolous. *See infra* Section III.

explained.  Def. Mot. At 7; ECF No. 1–2 at 4.  Accordingly, Plaintiff has failed to state a cognizable takings claim.  Rule 12(b)(6).

### B.    Plaintiff's Illegal Exaction Claim is Implausible and Insufficiently Pled

Additionally, Plaintiff makes a claim of illegal exaction, which falls under the Court's jurisdiction.  Compl. at 5; *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996); *Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004).  This claim, too, fails to withstand Defendant's 12(b)(6) motion to dismiss.

An illegal exaction claim is established when a complaint alleges that a (i) "plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum," and (ii) that sum was "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation."  *Kalos v. United States*, 87 Fed. Cl. 230, 238 (2009), aff'd, 368 F. App'x 127 (Fed. Cir. 2010); *see also Perry v. United States,* 149 Fed. Cl. 1 (2020), *aff'd*, No. 2020–2084, 2021 WL 2935075 (Fed. Cir. July 13, 2021) (quoting *Piszel v. United States*, 833 F.3d 1366, 1382 (Fed. Cir. 2016) ("[A] plaintiff cannot allege merely that he or she paid money to the government; rather, a plaintiff also must assert sufficient facts to demonstrate that such payment was made pursuant to a requirement that is 'contrary to law[.]'"))  To be an exaction, the payment must be "a direct result of the application of a statute or a regulation," *e.g.,* "compulsion or direction pursuant to a statute or regulation."  *Casa de Cambio Comdiv S.A. de C.V. v. United States*, 48 Fed. Cl. 137, 145 (2000), *aff'd,* 291 F.3d 1356 (Fed. Cir. 2002).

Plaintiff's claim of illegal exaction fails for two reasons.  First, as discussed, the allegation that Plaintiff's check was valuable currency paid over to the government is implausible.  *See supra* Section II.A.  If it is implausible that Plaintiff paid over money, then it is implausible that his money was illegally exacted.  Second, while Plaintiff alleges that he tendered a negotiable

instrument to the Defendant, he nowhere alleges that he improperly paid it over, nor that the Defendant asked, mandated, or caused such payment "contrary to law." *Piszel*, 833 F.3d at 1382. Instead, the facts as alleged indicate that Plaintiff's alleged deposit was unrelated to statute, regulation, or government inducement—in other words, not an illegal exaction. *See* Compl. at 6–7. Plaintiff's allegation of illegal exaction thus fails to state a claim upon which relief can be granted under Rule 12(b)(6).

### III.    <u>Plaintiff's Complaint Must be Dismissed as Frivolous</u>

At heart, Plaintiff's Complaint and successive filings seek to establish that his allegedly tendered currency—which he calls an "International Bill of Exchange," Resp. at 1, "certified check," Compl. at 6, "negotiable instrument," *id.*, and "eligible obligation," *id.*—merits "redemption" by the government in the amount of $36 million. The claim is frivolous. It is dubious that such an instrument, with zero indication of legitimacy or connection with a financial institution, written out to the U.S. Treasury, would obligate the Government; such facts rise "to the level of the irrational or the wholly incredible." *See Denton,* 504 U.S. at 33.

Plaintiff's theory, as the Court understands it, is reminiscent of other sovereign citizen theories. One such theory is that, to use people as collateral for the national debt, the United States Government has created individual trusts for each citizen, into which the Treasury deposits profits made from the citizen's property. *See Gravatt*, 100 Fed. Cl. 279, 283 (2011) (citing *Bryant v. Wash. Mut. Bank*, 524 F.Supp.2d 753, 758–59 (W.D. Va. 2007)) (explaining the "redemption" theory associated with sovereign citizens); *Rivera v. United States*, 105 Fed. Cl. 644, 650 (2012) (rejecting a similar theory). According to this theory, House Resolution 192—also known as Public Law 73–10—and the Uniform Commercial Code provide the legal means for individuals regain this wealth. *Gravatt*, 100 Fed. Cl. at 283. A "beneficiary" of an individual trust may resort

to "redemption," whereby he obtains this withheld wealth by filing financing statements naming himself both as debtor and secured party. *Id.*

Plaintiff's filings spell out a similar story. Plaintiff identifies himself as both "executor and living beneficiary," of his estate, Compl. at 5, and attaches tax forms listing himself as "lender," "payer," and "creditor," ECF No. 1–2 at 6–8. According to Plaintiff, the Government is a "federal custodian[]," which has engaged in a breach of fiduciary duty by not "redeeming" his $36 million deposited in federal custody. Am. Resp. at 22; *Id.* at 21–22; Compl. at 6. This has "converted Plaintiff's private credit into government-held debt." Resp. at 5. Plaintiff's invocation of the UCC and Public Law 73-10 are also typical of a sovereign citizen claim. Plaintiff's further motions for an in-chambers hearing, to recognize and enforce his "express trust," and to compel discovery and production of Trust/CRIS accounting, appear to arise from this alleged individual trust. *See* ECF Nos. 11, 13, 17.

Courts have universally rejected such theories as implausible and frivolous. *Miles v. United States*, No. 24-CV-1932, 2025 WL 28368, at *3 n.5 (Fed. Cl. Jan. 3, 2025) (listing cases and stating that "The Federal Circuit, this Court, and other Judges of the Court of Federal Claims have uniformly found that the Court of Federal Claims lacks jurisdiction over claims based on the sovereign citizen theory as it is invalid and frivolous."); *Hollowell v. United States*, No. 24-711, 2025 WL 1564761, at *4 n.4 (Fed. Cl. June 3, 2025) ("Judges have uniformly found sovereign citizen theories to be invalid and frivolous."); *Potter v. United States*, 161 Fed. Cl. 24, 29 (2022) (finding a lack of jurisdiction because "[i]n short, the legal fiction presented by plaintiff in the complaint is not based in law but in the fantasies of the sovereign citizen movement."); *Davenport v. United States*, No. 17-1122C, 2017 WL 5988354, at *2 (Fed. Cl. Dec. 4, 2017) ("The Tucker Act precludes sovereign citizen claims. . . [and] this Court has held that claims involving the

sovereign citizen theory are 'nonsensical' and should be dismissed as frivolous.") (citing *Gravatt*, 100 Fed. Cl. at 288 (2011)).

Plaintiff has filed in this Court before.[7]  Indeed, Plaintiff asserts that he has taken on the "extraordinary workload of maintaining twelve (12) active matters across this Court, the Federal Circuit, and the United States Supreme Court"—"extensive drafting, mailing, and preparation duties that would overwhelm a staffed law firm."  Am. Resp. at 3.  In a separate case before another judge of the Court of Federal Claims, Plaintiff filed twelve (12) "increasingly frivolous emergency motions" and was ordered to show cause as to why he should not be subjected to an anti-filing injunction, given his "onslaught of frivolous filings" which have become a "concerning pattern." *Polinski v. United States*, 177 Fed. Cl. 782, 787 (2025).  That judge further admonished Plaintiff, informing him that "[t]his guerrilla tactic of flooding the docket with meritless entries is an abuse of the procedures designed to maintain fairness and efficiency."[8]  September 3, 2025, Order and Notice at 1, *id.*  Even more recently, the Federal Circuit has affirmed a dismissal of one of Plaintiff's claims alleging a "failure to redeem," explaining that his "sweeping assertions" are insufficient to state a takings claim.  *Polinski v. United States*, No. 2025-1561, 2025 WL 2536876 at *1 (Fed. Cir. Sept. 4, 2025).

---

[7] *See Polinski v. United States*, No. 25-760, 2025 WL 2315463, at *2 (Fed. Cl. Aug. 12, 2025) (dismissed for failure to state a claim and lack of subject matter jurisdiction); *Polinski v. United States*, 177 Fed. Cl. 782, 783 n.1 (2025) (collecting ten (10) additional cases involving Plaintiff in the Court of Federal Claims).

[8] It has been observed that advancement of the "redemption" theory "appears to be a variation of the sovereign citizen tactic referred to as 'paper terrorism'—the filing of fraudulent UCC financing statements and default judgments against government agencies and officials, such as the United States Department of Justice, the Internal Revenue Service ("IRS"), judges, prosecutors, and clerks of court." *Gravatt*, 100 Fed. Cl. at 283 n.2 (2011) (citing, *e.g.*, *Monroe v. Beard*, 536 F.3d 198, 202–203 (3d Cir. 2008); *United States v. Belt*, Civ. No. PJM 10-2921, 2011 WL 3236065, at *4 (D. Md. July 26, 2011)).

The rapidity and repetitiveness of Plaintiff's filings, his insistence on recycling the same meritless arguments, his specious legal and financial theories, and his implausible claim that a questionable "check" written out to the U.S. Treasury constitutes an unlawful or compensable taking or exaction for which he deserves $36 million, all lead the Court to conclude that Plaintiff's claims are frivolous and, pursuant to 28 U.S.C. § 1915, must be swiftly dismissed.

## IV.    Plaintiff's IFP Motion

"Proceeding *in forma pauperis* is a privilege , . . . not a right," and courts have a "duty to deny *in forma pauperis* status to those individuals who have abused the system," *Bryant v. United States*,  618 Fed. App'x 683, 685 (Fed. Cir. 2015) (quoting *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998)); *In re Sindram*, 498 U.S. 177, 180 (1991).  For this reason, a "court shall dismiss the case at any time" if the action to be filed *in forma pauperis* "is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i).  As noted, this action is frivolous and Plaintiff has abused the Court system before.[9]    Accordingly, the Court denies Plaintiff's IFP Motion pursuant to 28 U.S.C. § 1915(e).  *Maat El v. United States*, No. 24-1563, 2024 WL 4851311, at *2 (Fed. Cl. Nov. 21, 2024) ("[W]here plaintiffs have exhibited a history of frivolous or abusive filings, courts have an obligation to deny IFP status on the basis of vexatious litigation.") (cleaned up) (citing *Straw v. United States*, Nos. 2021-1600, 2021-1602, 2021 WL 3440773 at *5 (Fed. Cir. Aug. 6, 2021) (collecting cases)); *Double Lion Uchet Express Tr. v. United States*, 149 Fed. Cl. 415, 423 (2020) (first citing *Manning v. United States*, 123 Fed. Cl. 679, 683 (2015), and then citing *Floyd v. United States*, 125 Fed. Cl. 183, 192 (2016) ("[Section 1915] requires that the court deny an *in forma pauperis* application if, in connection with or prior to ruling on the application, the court finds the case is frivolous.") (alterations in original).

---

[9] *See supra* Section III.

## V.    Plaintiff's Procedural Motions

Pending before the Court are Plaintiff's 17 Procedural Motions:

- Emergency MOTION for In Chambers Hearing and In Camera Review.  ECF No. 11.
- Emergency MOTION for Declaratory Judgment.  ECF No. 12.
- Emergency Motion to Recognize & Enforce Express Trust.  ECF No. 13.
- Motion to Seal Case.  ECF No. 14.
- MOTION for Writ of Replevin and Return of Instruments.  ECF No. 15.
- Emergency Motion for Summary Judgment.  ECF No. 16.
- Emergency MOTION to Compel Discovery and Production of Trust/CRIS Accounting.  ECF No. 17.
- Emergency Motion for Constructive Trust and Equitable Lien.  ECF No. 18.
- Emergency Motion for Leave to Proceed Sui Juris In Original Equity.  ECF No. 19.
- Emergency Motion for Order to Show Cause.  ECF No. 20.
- Emergency Motion for Accounting and Settlement.  ECF No. 21.
- Plaintiff's Motion for Judicial Notice of Federal Obligations (GSA Bonds) In CRIS Registry.  ECF No. 22.
- Emergency Motion for Immediate Restitution, Set-Off and Discharge of Public Debt.  ECF No. 23.
- MOTION for Final Settlement Discharge, and Closure of Case.  ECF No. 24.
- MOTION for Leave to File Out of Time and to Correct Deficiency.  ECF No. 26.
- MOTION for Leave to File Attached Objection to Defendant's Motion to Dismiss Out of Time.  ECF No. 30.
- Plaintiff's Motion for Leave to File Sur-Reply.  ECF No. 31.

The Court begins with Plaintiff's motion "to seal the case record in its entirety."  ECF No. 14 at 1.  There is a strong presumption of public access to judicial records.  *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1356–57 (Fed. Cir. 2011).  Here, Plaintiff suggests sealing purported "sensitive financial, trust, and proprietary records . . . as well as information subject to fiduciary confidentiality."  ECF No. 14 at 1.  He points to the "proprietary nature of trust instruments, CUSIP identifiers, Treasury accounts, and CRIS fund details."  *Id.* at 2.  Even assuming these identifiers and documents are real, Plaintiff does not provide a "specific explanation of the sensitivity of the information and the harm the disclosure of the information could cause beyond [] unsupported and unexplained assertions."  *Monbo v. United States*, No. 24-890C, 2024 WL 4404387, at *2 (Fed. Cl. Oct. 4, 2024).  Instead, he vaguely refers to "irreparable harm" and "expos[ing] sensitive trust

property to unauthorized third parties." ECF No. 14 at 2.  The Court therefore denies Plaintiff's request to seal the entire record.

Second, Plaintiff's Motion for Leave to File out of Time and Correct Deficiency (ECF No. 26) is denied in part and granted in part.  As reflected above, the Court has considered any new supplemental arguments contained in the Amended Response (ECF No. 26–2).  *See supra* at n. 2. (considering both the amended and original Response as supplements to the Complaint). Accordingly, the Court sees no reason to allow the Motion to be filed *nunc pro tunc* and denies the remainder of the motion as moot.

Finally, Plaintiff's remaining Procedural Motions are each denied for mootness.  Plaintiff's Motion to file an Objection to the Motion to Dismiss (ECF No. 30) unnecessarily attempts to file a duplicate of the Amended Response.  *See supra* n.2.  Other Procedural Motions (ECF Nos. 11– 24) demand a variety of actions from the court such as declaratory relief (ECF No. 12), a writ of replevin (ECF No. 15), and summary judgment (ECF No. 16).  *See* ECF Nos. 11–13, 15-24.  These motions replicate Plaintiff's frivolous legal theories; more to the point, none of them will revive this Court's jurisdiction.  The Court also sees no need to grant Plaintiff leave to file a Sur-Reply as requested in ECF No. 31, as Defendant did not raise any new arguments or issues in its Reply.[10] The Court accordingly denies these procedural motions as moot.

## VI.    **Plaintiff's Use of Artificial Intelligence**

Plaintiff's filings appear to have been drafted with the assistance of artificial intelligence (AI), and reference cases that do not exist, such as: (i) *Shearson Lehman Bros., Inc. v. Wasatch*

---

[10] Plaintiff's Motion to File a Sur-Reply accuses Defendant of citing "new authorities" in its Reply. ECF No. 31 at 2.  However, Defendant's Reply did not raise new substantive arguments.

*Bank,* 788 P.2d 514 (Utah 1990),[11] Emergency Motion for Declaratory Judgment (ECF No. 12) at 4, (ii) *Ivey v. United States*, 2019 WL 2080027 (Fed. Cl. 2019),[12] Emergency Motion to Recognize and Enforce Express Trust (ECF No. 13 at 8), and (iii) *Self v. Ray*, 61 F.R.D. 666 (E.D. Ark. 1974)[13] (*id.*).

While Plaintiff's use of AI, by itself, does not violate this Court's Rules, his citation to fake cases does. *See Willis v. U.S. Bank Nat'l Ass'n*, 783 F. Supp. 3d 959, 960–62 (N.D. Tex. 2025) (surveying positives and negatives of AI use in litigation throughout standing order regarding AI). The citation of fake, AI-created cases in briefing is "an 'abuse of the adversary system' and unacceptable." *Sanders v. United States*, 176 Fed. Cl. 163, 169 (quoting *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024)). It violates Rule 11, which obligates any party appearing before this Court—including *pro se* litigants—to, at a minimum, "confirm the existence and validity of[] the legal authorities on which they rely." *Id.* (quoting *Park*, 91 F.4th at 615); Rule 11(b)(2).

Other judges have imposed sanctions on *pro se* parties and attorneys alike, including "fines, requiring payment of the opposing party's fees, striking filings, dismissal of the action, and initiating disciplinary actions." *Id.* at 170. In *Sanders*, this Court opted to warn rather than sanction the plaintiff because the "[p]laintiff may not have been aware of the risk that AI programs can generate fake case citations and other legal misstatements." *Id.* Here, too, a warning will suffice, as the Court lacks jurisdiction over Plaintiff's claims and Defendant has not requested

---

[11] This citation instead references the actual case of *City of Monticello v. Christensen*, 788 P.2d 513 (Utah 1990), which addresses criminal law questions wholly irrelevant to the present action.

[12] This citation does not lead to any actual document.

[13] This citation references the actual case of *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666 (E.D. Ky. 1974), which addresses class action certification questions wholly irrelevant to the present action.

sanctions.  Further, Plaintiff is neither an attorney, nor a member of this Court's bar.  However, Plaintiff is now on notice of the risks associated with using AI.  Accordingly, Plaintiff is advised that he may be subject to sanctions in the future should he file additional pleadings in this or other courts referencing fictional, AI-generated legal authority.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 8) and **DISMISSES** Plaintiff's Complaint (ECF No. 1) for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and 12(h)(3), for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), and for frivolousness pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Additionally, Plaintiff's Motion to Proceed *in Forma Pauperis* (ECF No. 2) is **DENIED** for frivolousness pursuant to U.S.C. § 1915(e)(2)(B)(i).  Accordingly, Plaintiff is **ORDERED** to pay the $405.00 filing fee.   Plaintiff's Motion to file a Corrected Response (ECF No. 26) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's Motion to Seal (ECF No. 14) is **DENIED**.  Plaintiff's remaining Procedural Motions (ECF No. 11-13, 15-24, 30-31) are **DENIED** as **MOOT**.  The Clerk of Court is **DIRECTED** to enter Judgment accordingly and mark this case as closed.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge